IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Calvin Wayne Harris, Jr., #313035     ) | |
| ) | Civil Action No. 8:08-22-GRA-BHH |
| Plaintiff,     ) | |
| ) | |
| v.     ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| SCDC; Mr. Warden Robert     ) | |
| Stevenson, III, Warden, BRCI;     ) | |
| Ms. J. Montgomery, Grievance     ) | |
| Coordinator, BRCI; Ms. Linda     ) | |
| Dunlap, SCDC Medical Director;     ) | |
| Dr. J. Alewine, SCDC Head     ) | |
| Physician; Ms. Audrey     ) | |
| Daniels-Moore, DHO at     ) | |
| BRCI; and Sgt. Copeland, BRCI,     ) | |
| ) | |
| Defendants.     ) | |
| ) | |

The plaintiff, a prisoner proceeding pro se, brought this action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The matter is before the Court on the defendants' motion for summary judgment (Dkt. # 21.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on January 3, 2008, seeking damages for alleged civil rights violations.[1] On April 7, 2008, the defendants filed a motion for summary judgment. By order filed April 8, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 13, 2008, the plaintiff filed a response opposing the defendants' summary judgment motion.

---

[1] There is no stamp from the prison mailroom on the envelope which contained the petition. *See Houston v. Lack,* 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). Therefore, the undersigned is using the postmark date, January 3, 2008, as the filing date. (Compl. Attach. # 17).

## FACTS

The plaintiff is a state prisoner currently incarcerated at the Broad River Correctional Institution ("BRCI"). The plaintiff alleges that the defendants failed to provide him medical treatment for HIV for a year and failed to treat his sinus and neck problems and mental illness. He also alleges the defendant Sgt. Copeland used excessive force against him during an incident on November 25, 2007. Based on this incident, the plaintiff was charged with assaulting an officer and on December 12, 2007, he was convicted of the charge. He alleges his due process rights were violated by the defendant Audrey Daniels-Moore, the Disciplinary Hearing Officer ("DHO"), at the disciplinary hearing because he was not allowed to call as witnesses two correctional officers. He further alleges his disciplinary report states he is to serve 240 days of disciplinary detention, but he was actually sentenced to only sixty days.

The plaintiff is seeking an order requiring the defendant Alewine to arrange for the plaintiff to be evaluated by a qualified physician with expertise in treatment of respiratory ailments, carry out the treatment directed by such physician, and refrain from retaliating against the plaintiff. He also seeks an order requiring the defendants Stevenson and Daniels-Moore to release him from disciplinary detention, restore all of his rights and privileges, and expunge the disciplinary conviction. Finally, the plaintiff is seeking actual and punitive damages.

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**SCDC**

Initially, the undersigned notes that the plaintiff concedes that the defendants are correct in arguing that the SCDC is not a person subject to suit under §1983. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.) Inanimate objects such as buildings and grounds are not persons subject to suit under §1983. *See Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. §1983); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D.Va.

1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. §1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989)("Claims under §1983 are directed at 'persons' and the jail is not a person amenable to suit."). As the defendant SCDC is not a person, it should be dismissed from this action.[2]

**Medical Indifference Claim**

The plaintiff alleges the defendants have been deliberately indifferent to his medical needs. The defendants contend the plaintiff has failed to state such a claim. The undersigned agrees.

To establish a claim for deliberate indifference to medical needs, a plaintiff must present facts that establish the defendants had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987)). Further, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977).

---

[2]To the extent the plaintiff's response could be viewed as a motion to amend his complaint and add Jon Ozmint as a defendant, the undersigned would recommend this motion be denied as futile. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.) "[L]eave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "A motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). *Perkins v. United States,* 55 F.3d 910, 916-17 (4th Cir.1995) (holding that where an amended complaint would not survive a motion to dismiss, a district court was justified in denying a motion to amend). *See also Vandor, Inc. v. Militello*, 2001 WL 135818 (W.D.N.Y. 2001)(unpublished)(holding motion to amend should be denied where plaintiff failed to state any cognizable federal claim in the complaint ).

4

First, the undersigned notes that some of the defendants are not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the following defendants who are non-medical personnel: Warden Stevenson, Grievance Coordinator Montgomery, DHO Audrey Daniels-Moore, and Sgt. Copeland.

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability against any of the defendants, the plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier*, 896 F.2d at 854. The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

The plaintiff has at best alleged a delay in treatment of his HIV. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage*

*v. Mann*, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment resulted in a detrimental effect or has caused him a life-long handicap or permanent loss.

The record shows the plaintiff was prescribed HIV medications, but that the medication was discontinued due to the plaintiff's own noncompliance. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A-2 at 29; 31 & A-1 at 13; 15; 16; 20.)  While the record supports the plaintiff's allegation that his lab tests showed a temporary increase in the severity of his HIV status during the period when he was not taking his medications, the record also shows that upon re-starting the HIV medications, the plaintiff's figures returned to the level they were at when he had previously been taking the medications.[3]

Further, the medical records show that the plaintiff was evaluated on a regular basis for his HIV condition and HIV anti-retroviral medications were prescribed and the plaintiff was urged to take the medications.  However, the record shows that the plaintiff often voluntarily chose not to take his medications, not to come to sick call or to doctor appointments, and not to attend mental health counseling sessions. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A-2 at 30 & Ex. A-1 at 10; 12; 13; 15; 16; and 20.)[4]  Reviewing the plaintiff's medical records, they show that he has received more than adequate care and treatment for all of his medical and mental health problems, including his HIV. Based on the foregoing, the plaintiff's medical indifference claims should be dismissed.

**Claims Relating to Disciplinary Conviction**

---

[3] In monitoring a patient's HIV treatment, physicians monitor their CD4 and viral load counts. *The Body, The Complete HIV/AIDS Resource*, http://www.thebody.com/atn/364/viral_load.html.

[4] Although the plaintiff appears to complain about having to pay a fee for medical services, he has not shown that he was denied treatment for any inability to pay. Jails are allowed to impose co-payments for medical services. *Hamm v. Riley*, No. 05-2046, 2007 WL 1377611 (D.S.C. May 7, 2007). *See, also, Reynolds v. Wagner*, 128 F.3d 166, 173-174 (3rd Cir.1997) (deliberate indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society); *Bailey v. Carter,* 15 Fed. Appx. 245 (6th Cir.2001) (requiring an inmate to make a three dollar co-pay for medical treatment does not violate the Eighth or Fourteenth amendments.).

The plaintiff alleges the defendant Copeland used excessive force during an incident on November 25, 2007. Based upon this incident, the plaintiff was charged with assaulting an officer. A disciplinary hearing was held on this charge on December 12, 2007, and the plaintiff alleges his due process rights were violated during this disciplinary hearing when he was not allowed to call two correctional officers as witnesses. He seeks damages, release from the sanctions, and an expungement of the disciplinary conviction. The defendants contend these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The undersigned agrees.

On November 25, 2007, the plaintiff alleges he was in the cafeteria getting a napkin when he was grabbed by the defendant Copeland who invaded his space and yelled, "Sir, I said take your ass that way and sit down somewhere." (Compl. at 7.) The plaintiff alleges he responded that he was only trying to get a napkin and Copeland then said, "I said sit your punk ass down somewhere." (*Id*.) The plaintiff states that he thought Copeland was being disrespectful and he did not appreciate his tone or demeanor, but he sat down at a table. (*Id*.) He then alleges Copeland grabbed him by the arm and began to remove him from the cafeteria "by means of force." (*Id*.) The plaintiff alleges Copeland was "overly aggressive and assaultive in the manner in of which he was escorting the plaintiff out of the building so the plaintiff then jerked his arm loose from Copeland's grasp and proceeded to leave the chowhall on his own free will. Defendant Copeland again clasped onto the plaintiff's arm and started jerking him around again." (Compl. 7-8.) The plaintiff allege he pulled his arm loose and told Copeland he could leave on his own and he attempted to leave when Copeland grabbed the plaintiff's arm and stated, "I'll knock your punk ass out" and "'butted'" his chest against the plaintiff's as if some animalistic challenge to fight." (Compl. at 8.)

The plaintiff then alleges Officers Rivera and Jackson arrived and escorted him from the cafeteria with Copeland yelling expletives and threats. *(Id.)* The plaintiff was taken to a holding cell and later place in lock-up and charged with assaulting an officer. (*Id*.)

7

The disciplinary hearing was held on December 12, 2007. In the middle of disciplinary hearing, after Copeland had testified, the plaintiff requested that Officers Rivera and Jackson be called to discredit Copeland. The DHO, the defendant Daniels-Moore, denied the plaintiff's request stating that the plaintiff had failed to make the request in writing prior to the hearing. The plaintiff was convicted of assaulting an officer. The plaintiff filed an appeal of his conviction on December 12, 2007, and when he filed this action on January 3, 2008, he had not yet received a response. (Compl. at 10.)

Initially, the undersigned notes that it appears that the plaintiff has not exhausted his administrative remedies on this issue. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, __ U.S.__ , 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can

be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden. A responsible official has sixty days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e. The plaintiff filed this action prior to receiving a response and prior to the time to respond had even run. Therefore, it appears that the plaintiff's claims are barred for failing to exhaust his administrative remedies prior to filing this action.

More importantly, on the merits, the plaintiff may not bring an action pursuant to § 1983 for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," without first having that conviction or sentence reversed, overturned, expunged, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The United States Supreme Court specifically extended the *Heck* reasoning to the context of inmate disciplinary convictions in *Edwards v. Balisok*, 520 U.S. 641 (1997).

While *Heck* does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, in situations such as the plaintiff's, where the administrative action affected credits toward release based on good time served, *Heck* bars the § 1983 suit. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004) ("*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.")  A prisoner cannot bring a § 1983 action challenging a disciplinary proceeding resulting in the loss of good-time credits if the possible relief would necessarily imply the invalidity of the punishment imposed, unless the disciplinary action was previously invalidated. *Heck,* 512 U.S. at 646-47. Failure to allow the plaintiff to have witness testimony in his defense is the kind of procedural defect that would imply the invalidity of the disciplinary action. *Id*. at 647. The plaintiff was sanctioned with the loss of good time credit and his disciplinary conviction has not been invalidated in any way. Further, the plaintiff claims his rights were violated when he was not allowed to present two alleged witnesses.[5]  Therefore, the plaintiff's claim that his due process rights were violated during the disciplinary hearing is barred by the decision in *Edwards*. *See also Fox v. Ward*, 2008 WL 550115 (D.S.C. 2008).

Finally, to the extent that the plaintiff has attempted to allege a claim of excessive force, the plaintiff has failed to state a claim.  To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298.  The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The

---

[5]The undersigned notes the two correctional officers which the plaintiff contends are witnesses to the defendant Copeland's use of excessive force actually did not arrive until after the alleged incident. (Compl. ¶ 7.)

objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994). The plaintiff alleges Copeland grabbed his arm several time and "butted" his chest against the plaintiff's chest. However, the plaintiff has not alleged any injury from the alleged actions of the defendant Copeland. Thus, the plaintiff has failed to allege an excessive force claim.

**State Law Claims**

To the extent that the plaintiff's complaint states additional claims under state law, (i.e. medical malpractice or assault), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 21) be GRANTED.

IT IS SO RECOMMENDED.

_Bruce H. Hendricks_
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

August 28, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

11